# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CYNTHIA PAYTON**                                              **CIVIL ACTION**

**VERSUS**                                                          **NO. 23-329-JWD-RLB**

**TONY CLAYTON, ET AL.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on January 5, 2024.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**CYNTHIA PAYTON**                                    **CIVIL ACTION**

**VERSUS**                                            **NO. 23-329-JWD-RLB**

**TONY CLAYTON, ET AL.**

<u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

Before the Court is Tony Clayton, Scott Stassi, and Nedi Morgan's Motion to Dismiss Pursuant to FRCP Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted (R. Doc. 4). The motion is opposed. (R. Docs. 7, 8).

Also before the Court is Tony Clayton, Scott Stassi, and Nedi Morgan's Motions to Dismiss under Rule 12(b) for Insufficient Service of Process. (R. Docs. 23, 25, 26). The motions are opposed. (R. Doc. 34).

Also before the Court is Eugene Simpson's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6). (R. Doc. 33). The motion is opposed. (R. Doc. 40). Eugene Simpson filed a Reply. (R. Doc. 41).

**I.    Background**

On May 1, 2023, Cynthia Payton ("Plaintiff" or "Payton") commenced this civil rights action. (R. Doc. 1, "Complaint"). Plaintiff named as defendants Tony Clayton, individually and in his official capacity as District Attorney of Iberville Parish ("Clayton"), Scott Stassi, individually and in his official capacity as Chief Administrator of the Iberville Parish District Attorney's Office ("Stassi"), Nedi Morgan, individually and in her official capacity as Assistant District Attorney of Iberville Parish ("Morgan") (collectively, the "DA Defendants"); Kristin

1

Kobb ("Kobb") and Mayland Johnson ("Johnson");[1] and Eugene Simpson, Justice of the Peace for Iberville Parish ("Justice of the Peace Simpson"). (Compl. ¶ 1). Plaintiff alleges that "[j]urisdiction is proper" in this Court under 42 U.S.C. § 1983, *et seq*., the U.S. Constitution (including the First, Fourth, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendments), the Louisiana State Constitution (Article I, Sections 5 and 7), and various Louisiana Civil Code articles (Articles 2315, 2315.9, 2316, 2320, 2324). (Compl. ¶ 2). Plaintiff alleges that each of the Defendants was a person "acting under color of law" within the meaning of Section 1983. (Compl. ¶ 4). Plaintiff further alleges that the Defendants are all liable "for the intentional, malicious, conspiratorial, reckless, and/or otherwise-tortious conduct set forth" in the Complaint, including alleged violations of the Fourth, Fifth, and Sixth Amendments. (*See* Compl. ¶ 5-11). Reading the pleading liberally, the Court concludes that Plaintiff is seeking relief under the federal and state sources of law cited for the purposes of alleging jurisdiction.

The factual allegations in the Complaint, which are accepted as true for the purposes of resolving the instant motions, begin with the issuance of an arrest warrant by Justice of the Peace Simpson on October 17, 2017, and Plaintiff's subsequent arraignment for defamation of character. (Compl. ¶¶ 14-35). While the defamation of character charges were ultimately dropped, Plaintiff alleges that she was required to attend court proceedings "as a means of punishment and retaliation for the social media post and her exercise of freedom of speech" and to otherwise "permanently ruin her." (Compl. ¶¶ 40-42).

---

[1] Neither Johnson nor Kobb have made an appearance in this action. There is evidence in the record that Plaintiff served process on Johnson. (R. Doc. 17). Plaintiff also obtained an entry of default with respect to Johnson from the Clerk's Office under Rule 55(a). (*See* R. Doc. 29, 30). Plaintiff did not, however, move for default judgment with respect to Johnson under Rule 55(b). There is no evidence in the record that Plaintiff served process on Kobb. The Clerk's Office denied Plaintiff's motion for entry of default with respect to Kobb. (R. Docs. 38, 39).

On May 18, 2018, Plaintiff filed a federal civil action in this district regarding the foregoing arrest warrant and subsequent criminal proceedings, naming as defendants the Town of Maringouin and various other individuals, including Justice of the Peace Simpson, Hosea Anderson (Chief of the Maringouin Police Department), and Brett Stassi (Sheriff of Iberville Parish). *See Payton v. Town of Maringouin*, *et al*., No. 18-563-JWD-EWD, ECF No. 1 (M.D. La. May 18, 2018). All of Plaintiff's claims were dismissed with prejudice. *See Payton v. Town of Maringouin*, No. 21-30440, 2022 WL 3097846, at *2 (5th Cir. Aug. 3, 2022). Plaintiff does not reference this previous federal action in her instant Complaint.

Plaintiff now seeks relief with respect to alleged harassment by Kobb and Johnson on September 5, 2020, another arrest warrant for stalking issued by Justice of the Peace Simpson on September 8, 2020, and the subsequent criminal proceedings. The timeline of events appears to overlap those concerning Plaintiff's previous arrest. Plaintiff alleges that at some point (and apparently through social media), she sought assistance from various law enforcement agencies, including the "Maringouin Police Department, Iberville Parish Sheriff's Office, Louisiana State Police, Louisiana District Attorney's Office, Attorney General, Governor Edwards, and the Iberville Parish's District Attorney," about "being stalked, tracked, terrorized, harassed and threatened." (Compl. ¶¶ 36-37). Plaintiff also erected a sign in front of her home that read: "Maringouin Mobsters and Multiparish stalkers are supported by taxpayers $s and protected by the Chief." (Compl. ¶¶ 38-39). Plaintiff refused to remove the foregoing sign when confronted by neighbors. (Compl. ¶¶ 55-64).

It appears that further conflicts arose specifically between Plaintiff and Kobb and Johnson, who appear to be Plaintiff's neighbors. Plaintiff generally asserts that defendants Kobb and Johnson are members of the alleged "Maringouin Mob," having terrorized Plaintiff "by

bombarding the area in front of or near her home with extremely loud and often vulgar music."
(Compl. ¶ 44). Plaintiff further alleges that she specifically complained, without success, several
times to the Iberville Sheriff's Office about harassment by Kobb and Johnson. (Compl. ¶¶ 47-
54).

On September 5, 2020, Plaintiff was working in her yard when Kobb "presented her
middle finger and called Payton a bitch." (Compl. ¶ 65). Plaintiff then removed another sign
from her yard that read "GET A JOB," placed the sign in her vehicle, and drove down her street
passing several homes without communicating to anyone. (Compl. ¶¶ 66-67). Plaintiff contacted
the Iberville Parish Sheriff's office to report the alleged harassment by Kobb. (Compl. ¶ 68).
Iberville Parish Sheriff's Officer Jacob Juge arrived on the scene. (Compl. ¶ 69). Officer Juge's
incident report focused on allegations made by Kobb and Johnson with respect to Plaintiff (as
opposed to Plaintiff's allegations regarding Kobb and Johnson), including allegations that
Plaintiff pulled her car into their yard with the "GET A JOB" sign and harassed them "multiple
times" including videotaping their children. (*See* Compl. ¶¶ 69-93). Officer Juge in not a
defendant in this action.

Plaintiff alleges that on that same day, "Morgan maliciously, with ill intent, without
probable cause, and without any evidence, swore to an affidavit charging Payton with Count 1:
R.S. 14:40.2 STALKING" by "[a]ttesting to false accusations put forth by Johnson." (Compl. ¶
95). Plaintiff then raises various broad allegations against the Defendants resulting from the
swearing out of this affidavit and the issuance of an arrest warrant:

> Clayton, Sassi and Morgan accepted the inflammatory charges without a
> sliver of truth. Dogmatically pursued false allegations, maliciously extending
> Payton's court dates. Deprived Payton to a speedy trial. Deprived Payton of a
> trial. Prolonged bogus claims through cunning maneuvers and preventing Payton
> from being able to rebut and put the light of truth up against these lies.

4

Clayton, Stassi[,] Morgan, Kobb, Johnson and Simpson['s] actions created a caustic atmosphere around Payton. The lies, especially the child predator implication was able to grow and spread like a California brush fire pushed along by Kobb.

These false allegations have become a permanent part of Payton's record and permanent personal history and has caused a very deep wound in her psychic and reputation.

Clayton, Stassi, Morgan and Simpson acted outside the normal scope of their office and maliciously prosecuted Payton willfully and unreasonably with unparalleled unethical duplicity for years.

Said affidavit was filed and became permanent historical record in the Office of the Clerk of the Court of the City of Plaquemine, State of Louisiana, Criminal Division.

By virtue of such affidavit a warrant was issued by the said Clerk.

(*See* Compl. ¶¶ 96-101).

The remaining allegations focus on the service of the arrest warrant on Plaintiff, the criminal proceedings that followed, and the ultimate dismissal of the criminal charges. (*See* Compl. ¶¶ 102-141). Plaintiff alleges that she first appeared in court on November 5, 2020, with her retained counsel, Kearny Loghlin. (Compl. ¶ 103). Plaintiff pled not guilty, noting that Kobb and Johnson were not in court and that "no evidence of any kind was provided" to support the charge of stalking. (Compl. ¶¶ 108-112). It appears that Plaintiff appeared for trial on February 2, 2021, but the matter was continued various times until May 4, 2022. (*See* Compl. ¶¶ 113-141). Plaintiff alleges that prior to the final trial date, she moved for discovery and Morgan responded that the 18th Judicial District Attorney's Office "could not provide any evidence to affirm any statement made by Kobb or Johnson." (Compl. ¶¶ 123-125).

Plaintiff sets forth a claim for "conspiracy" to falsely convict her of stalking that appears to including Morgan, Stassi, Johnson, and Kobb. (Compl. ¶¶ 129-141). It appears that Plaintiff is alleging that this conspiracy took place when Kobb and Johnson "attended the court

proceedings" on January 4, 2022. (*See* Compl. ¶¶ 119). Plaintiff alleges, among other things, that she "overheard Stassi informing Kobb and Johnson that they did not have any evidence and that they were going to push the court date back to allow them to get some evidence." (Compl. ¶¶ 130). In the end, Plaintiff alleges that the "matter was discharged" after "Morgan appeared and gave testimony without evidence, with the malicious intent and purpose of convincing the Court that Payton was guilty of the crimes falsely reported by Kobb and Johnson, without probably cause and without any evidence for such charge and prosecution." (Compl. ¶ 139). Because the DA's Office was no longer going to pursue the charges, Plaintiff alleges that "Morgan and Stassi prevented Payton from having a trial and due process." (Compl. ¶¶ 140-141).

Plaintiff asserts a "supervisory liability" claim against Clayton by alleging that he "failed to train and supervise Stassi and Morgan in the lawful application of Louisiana's criminal law, and the arrests and prosecution of Payton was a plain and obvious consequence of his failure." (Compl. ¶¶ 142-143).

With respect to all Defendants, Plaintiff seeks the recovery of punitive damages. (Compl. ¶¶ 144-148).

## II.    Law and Analysis

### A.    Pro Se Litigants

*Pro se* pleadings are to be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (recognizing the established rule that this court "must construe [a *pro se* plaintiff's] allegations and briefs more permissively"). Furthermore, a court must liberally construe a *pro se* complaint, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curia). Nevertheless, "a *pro se* litigant is not exempt . . . from

compliance with relevant rules of procedural and substantive law." *NCO Fin. Systems, Inc. v. Harper–Horsley*, No. 07-4247, 2008 WL 2277843, at \*3 (E.D. La. May 29, 2008) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)). As such, a *pro se* plaintiff's complaint "must set forth facts giving rise to a claim on which relief may be granted." *Johnson*, 999 F.2d at 100 (citation omitted).

Additionally, "[a] liberal reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts." *Kiper v. Ascension Parish Sch. Bd.*, No. 14-313, 2015 WL 2451998, at \*1 (M.D. La. May 21, 2015) (citing *Callahan v. C.I.R.*, No. 99-0295, 2000 WL 1141607, at \*1 (M.D. La. Apr. 10, 2000)). A "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs. *Id.* Finally, a *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer." *NCO Fin. Systems*, 2008 WL 2277843, at \*3 (citing *Birl*, 660 F.2d at 593).

### B.    The DA Defendants' Motions to Dismiss for Insufficient Process (R. Docs. 23, 25, 26)

As an initial matter, on September 13, 2023, the DA Defendants filed three nearly identical motions to dismiss under Rule 12(b)(4) and Rule 4(m) for insufficient service of process. (*See* R. Docs. 23, 25, 26).[2] These motions were filed <u>after</u> the DA Defendants filed a motion to dismiss under Rule 12(b)(6) on June 1, 2023. (*See* R. Doc. 4).

Rule 12(g) provides the following: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. 12(g)(2). The exceptions provided in Rule 12(h)(2) and 12(h)(3) do not apply to motions for insufficient service of process. *See* Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which

---

[2] It appears that the repeated filings were either attempts to correct previous filing errors.

relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Rule 12(h)(1)(a) states that "[a] party waives any defense listed in Rule 12(b)(2)-(5) by . . . omitting it from a motion in the circumstances described in Rule 12(g)(2). Fed. R. Civ. P. 12(h)(1)(A). Accordingly, a party waives the following defenses if not raised in an initial Rule 12(b) motion: lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of process. *See* Fed. R. Civ. P. 12(b)(2)-(5), (h)(1)(A).

Here, the DA Defendants did not move for insufficient service of process under 12(b)(4) at the time they filed their 12(b)(6) motion. Accordingly, the DA Defendants' motions to dismiss under Rule 12(b)(4) for insufficient service of process must be denied because personal jurisdiction has been waived. *See Gilmour, Tr. for Grantor Trusts v. Blue Cross & Blue Shield of Alabama*, No. 17-518, 2019 WL 2147580, at *1 (W.D. Tex. Mar. 6, 2019) ("A party waives its personal jurisdiction defense by omitting it from a previously-filed motion to dismiss if the personal jurisdiction defense was available when the initial motion was made.") (quoting *Orthoflex, Inc. v. ThermoTek, Inc.*, No. 10-2618-D, 2013 WL 2284878, at *1 (N.D. Tex. May 23, 2013) (citing Fed. R. Civ. P. 12(g)(2), (h)(1))).

Furthermore, given that the DA Defendants have waived personal jurisdiction, it is also proper to deny these motions to the extent they seek dismissal for failure to effect service within the 120-day period provided by Rule 4(m).

Accordingly, the Court will turn to whether, and to what extent, Plaintiff's claims must be dismissed for failure to state a claim.

### C.    Legal Standards for Motions to Dismiss for Failure to State a Claim

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678. In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

Furthermore, the Court may perform a review to determine whether the complaint should be dismissed as frivolous or malicious to the extent any named defendant has not expressly sought dismissal of Plaintiff's claims. A plaintiff's payment of the filing fee does not preclude this review. *See Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 307-308 (1989) ("Statutory provisions may simply codify existing rights or powers. [28 U.S.C.] § 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this

statutory provision."); *see also Doe v. City of Baton Rouge*, No. 20-514, 2021 WL 304392, at *2 (M.D. La. Jan. 29, 2021) ("[R]egardless of whether Plaintiff were to pay the filing fee, this Court has the inherent power to screen a pleading for frivolousness."), *appeal dismissed*, No. 21-30061, 2022 WL 881753 (5th Cir. Mar. 24, 2022), *cert. denied sub nom. Doe v. City of Baton Rouge, Louisiana*, 143 S. Ct. 376 (2022).

In most circumstances, a court should allow a plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs are generally given one chance to amend before dismissal unless "it is clear that the defects are incurable"). However, a court should deny leave to submit futile amendments that are "insufficient to state a claim." *Jamieson v Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985).

### D. Justice of the Peace Simpson's Motion to Dismiss Failure to State a Claim (R. Doc. 33)

Justice of the Peace Simpson asserts that Plaintiff has failed to state a claim against him under Rule 12(b)(6) for three reasons: (1) Plaintiff's claims are barred by *res judicata* to the extent she is seeking relief with respect to the October 17, 2017 arrest warrant; (2) Plaintiff's claims are barred because Justice of the Peace Simpson is entitled to absolute judicial immunity for judicial acts performed within his jurisdiction; and (3) Plaintiff's claims are prescribed. (R. Doc. 33). Because the Court concludes the first two reasons require dismissal of Plaintiff's claims, the Court will need not consider whether and to what extent Plaintiff's claims are prescribed.

#### 1. Res Judicata

"The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3)

the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

As an initial matter, res judicata generally may not be raised in a Rule 12(b)(6) motion, and must, instead, be pled as an affirmative defense under Rule 8(c)(1). *See Singh*, 428 F.3d 570 n. 2; *McIntyre v. Ben E. Keith Co.*, 754 F. App'x 262, 264-65 (5th Cir. 2018). Nevertheless, a district court may dismiss a claim on res judicata grounds "in the interest of judicial economy where both actions were brought before the same court." *Boone v. Kurtz,* 617 F.2d 435, 436 (5th Cir. 1980); *see In & Out Welders, Inc. v. H&E Equip. Servs., Inc.,* No. 16-86, 2017 WL 1015312, at *5 (M.D. La. Mar. 15, 2017). This exception applies to this action—to the extent Plaintiff is again raising a claim against Justice of the Peace Simpson in light of the October 17, 2017 arrest warrant—because both actions were filed by Plaintiff in this district.[3] Accordingly, the Court will consider Justice of the Peace Simpson's res judicata arguments in the context of a Rule 12(b)(6) motion.

The Court interprets the Complaint as only seeking recovery with respect to the later arrest warrant issued on September 5, 2020, and the subsequent criminal proceedings for stalking.  That said, to the extent Plaintiff is attempting to again raise a claim against Justice of the Peace Simpson with respect to the October 17, 2017 arrest warrant, any such claim is barred by res judicata. All four elements are satisfied. First, identical parties are involved in both actions. Second, the prior judgment was rendered by a court of competent jurisdiction. Third, the prior action was concluded by a final judgment on the merits on Justice of the Peace Simpson's Rule 12(b)(6) Motion to Dismiss on the grounds of absolute judicial immunity. *See Payton v.*

---

[3] Furthermore, the same district judge has was assigned to both civil actions.

*Town of Maringouin*, No. 18-563, 2019 WL 1904683 (M.D. La. Apr. 29, 2019). While the district judge provide Plaintiff with the opportunity to amend the pleadings to cure the deficiencies in the pleading in that former action with respect to Justice of the Peace Simpson, Plaintiff failed to file any appropriate amendment. Fourth, any claims brought against Justice of the Peace Simpson in this action with respect to the October 17, 2017 arrest warrant were raised in the original action. Accordingly, to the extent that Plaintiff is seeking relief from Justice of the Peace Simpson for the issuance of the October 17, 2017 arrest warrant, the claims are subject to dismissal on the grounds of res judicata.

### 2.     Absolute Judicial Immunity

In addition, as in the original action, all of Plaintiff's claims brought against Justice of the Peace Simpson must be dismissed in light of absolute judicial immunity.

Absolute judicial immunity extends to claims arising from acts performed in the defendant's judicial role. *Brewer v. Blackwell*, 692 F.2d 387, 396 (5th Cir. 1982). The immunity shields a judge unless he or she acts in the clear absence of jurisdiction over the subject matter or in a non-judicial capacity. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). In other words, "a judge has no immunity (1) for actions taken outside of his judicial capacity, or (2) for actions that are judicial in nature, but occur in the complete absence of all jurisdiction." *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993) (citing *Mireles*, 502 U.S. at 11). This immunity applies however erroneous the act and however evil the motive. *Johnson v. Kegans*, 870 F.2d 992, 995 (5th Cir. 1989).

The Supreme Court has described the reasoning behind absolute judicial immunity as follows:

> [T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have. . . . If

> judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication. Nor are suits against judges the only available means through which litigants can protect themselves from the consequences of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability.

*Forrester v. White*, 484 U.S. 219, 226-27 (1988).

Plaintiff opposes Justice of the Peace Simpson's motion based upon the Magna Carta, the First and Fourteenth Amendments of the U.S. Constitution, and Louisiana anti-SLAPP legislation, La. Code Civil Proc. art. 971. (R. Doc. 40 at 2-3). Plaintiff broadly asserts that Justice of the Peace Simpson "abused his power and abused the judicial process," conspired with certain co-defendants, and otherwise did not act "in a judicial manner [by] requiring any type of evidence to move such a salacious and obviously fictitious case forward." (R. Doc. 40 at 3). Plaintiff goes on to argue that Justice of the Peace Simpson has "demonstrated a great deal of racism and prejudice" against Plaintiff and is not qualified to occupy the office of Justice of the Peace in light of his age. (R. Doc. 40 at 4). Plaintiff does not, however, directly address the issue of whether Justice of the Peace Simpson is entitled to absolute judicial immunity.

For the following reasons, the Court concludes that absolute judicial immunity requires dismissal of Plaintiff's claims brought against Justice of the Peace Simpson.

### a.     Judicial Capacity

The first issue that the Court must address is whether Justice of the Peace Simpson's issuance of the arrest warrants was outside of his judicial capacity (*i.e.*, whether these acts were "judicial in nature"). *Malina*, 994 F.2d at 1124. With respect to determining whether a judge's actions were "judicial in nature," the Fifth Circuit has instructed courts to consider four factors:

"(1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity." *Id*. (citing *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972)). "The four factors are to be broadly construed in favor of immunity, and immunity should not be denied where the denial carries the potential of raising more than a frivolous concern in a judge's mind that to take proper action might expose him to personal liability." *Malina*, 994 F.2d at 1124 (citing *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985)). It is not required that all factors be met to afford a judge judicial immunity. *Adams*, 764 F.2d at 297.

Here, Plaintiff's claims against Justice of the Peace Simpson concern the issuance of arrest warrants.[4] The district judge in this action has already concluded that the first *McAlester* factor is satisfied (*i.e*., the issuance of arrest warrants by a Louisiana justice of the peace are judicial in nature) given that the issuance of arrest warrants by a justice of the peace is a "normal judicial function" given that they have the authority to issue arrest warrants under Louisiana Code of Criminal Procedure article 202. *Payton*, 2019 WL 1904683, at *7. Indeed, that statute provides that a magistrate shall issue an arrest warrant when presented a proper affidavit specifying the nature, date, and place of the offense, the name of the offender if known, and the name of any injured person where the "magistrate has probable cause to believe that an offense was committed and that the person against whom the complaint was made committed it." La. Code Crim. Proc. art. 202(A)(2); *see also* La. R.S. 49:251.4 (providing justices of the peace

---

[4] Plaintiff also alleges that Justice of the Peace failed to appear at a court proceeding before Judge Batiste in response to subpoenas issued by Plaintiff. (Compl. ¶¶ 117, 199). Any relief with respect to compliance with subpoenas in the criminal proceeding before Judge Batiste is outside of the scope of claims brought in this action.

authority to issue arrest warrants); La. R.S. 13:2586(C)(1) (justices of the peace "shall have criminal jurisdiction parishwide as committing magistrates").

The second and fourth *McAlester* factors also support the conclusion that the Justice of the Peace Simpson's acts were judicial in nature. Plaintiff does not allege where the arrest warrants were signed. Regardless, nothing in the Complaint supports a finding that the arrest warrants were not signed in a "courtroom or appropriate adjunct space." *See Payton*, 2019 WL 1904683, at *7 (while the issuance of the arrest warrant was done at the Sheriff's Substation in the Town of Maringouin, nothing in the complaint suggested that this was not an appropriate "adjunct space" for issuing an arrest warrant). Moreover, "it appears that the action complained of arose as a result of the other defendants' visit to Defendant Simpson in his capacity as Justice of the Peace to sign the warrants." *Id*. "Because the factors must be construed broadly in favor of immunity, the Court, considering factors (2) and (4), concludes that the act occurred in an appropriate adjunct space arising out of a visit to the Justice of the Peace in his official capacity." *Id*.

Finally, the Court concludes that while the third *McAlester* factor is not satisfied with respect to the issuance of the arrest warrants, consideration of all factors as a whole requires the conclusion that "Justice of the Peace Simpson's issuance of the arrest warrants was and is a normal judicial function." *Id*.

### b.    Clear Absence of All Jurisdiction

Having concluded that Justice of the Peace Simpson's issuance of the arrest warrants were judicial in nature, the Court must now address whether the issuance of the arrest warrants occurred in "the complete absence of all jurisdiction," thereby depriving him of absolute immunity. *Malina*, 994 F.2d at 1124. Subject matter jurisdiction over a matter constitutes

sufficient jurisdiction for purposes of judicial immunity. *Id*. at 1125. Plaintiff has a high burden of demonstrating the lack of absolute judicial immunity based on this standard. *See Stump v. Sparkman*, 435 U.S. 349, 356 (U.S. 1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority.").

Here, Justice of the Peace Simpson was acting in his capacity as a magistrate and issued the arrest warrants pursuant to his authority under Louisiana law. Even if Justice of the Peace Simpson had issued arrest warrants for crimes allegedly committed outside of the jurisdiction in which he holds office, such "conduct is not of the kind that will deprive him of judicial immunity." *Payton*, 2019 WL 1904683, at *9.

The Court is aware that Plaintiff has made broad and conclusory conspiracy allegations. Nevertheless, Justice of the Peace Simpson is entitled to absolute judicial immunity notwithstanding Plaintiff's conspiracy claims, given that there are no allegations to support a finding that he acted outside of the scope of his judicial duties or without jurisdiction. *See Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991); *McCoy v. Bogan*, No. 20-388, 2022 WL 4492781, at *8 (M.D. La. Sept. 9, 2022), *report and recommendation adopted*, 2022 WL 4490159 (M.D. La. Sept. 27, 2022).

For the foregoing reasons, Plaintiff's claims against Justice of the Peace Simpson are subject to dismissal, with prejudice, in light of absolute judicial immunity. *See Turner v. Thomas*, No. 16-1001, 2016 WL 7638296, at *3 (W.D. La. Nov. 22, 2016), *report and recommendation adopted*, 2017 WL 53281 (W.D. La. Jan. 3, 2017) (any implicit Section 1983 claim against state judge was barred by absolute judicial immunity because the plaintiff's complaints about the judge all concerned actions taken by the judge directly in connection to a pending civil suit); *Spencer v. McNamara*, No. 10-1678, 2010 WL 3168435, at *1 (E.D. La. July

16, 2010), *report and recommendation adopted*, 2010 WL 3189974 (E.D. La. Aug. 10, 2010) (dismissing Section 1983 and RICO claims brought against federal judges where "[d]espite the plethora of exclamation points and question marks in plaintiff's complaint, nothing in either the complaint or the motion reveals that any of the judges acted outside the scope of their judicial capacity."). This dismissal applies to Plaintiff's federal and state law claims brought against this defendant. *See McCoy*, 2022 WL 4490159, at *8.

**E.    The DA Defendants' Motion to Dismiss Failure to State a Claim (R. Doc. 4)**

The DA Defendants seek dismissal of Plaintiff's claims for failure to state a claim under Rule 12(b)(6) because they are entitled to absolute prosecutorial immunity. (R. Doc. 4). In the alternative, the DA Defendants argue that Plaintiff has failed to allege that the constitutional violations were the result of a policy in force at the 18th Judicial District Attorney's Office that was the motivating force for the alleged violations.

**1.    Absolute Prosecutorial Immunity**

The Fifth Circuit recently examined the scope and contours of prosecutorial immunity in *Singleton v. Cannizzaro*, 956 F.3d 773 (5th Cir. 2020). Therein the Court noted the following:

> "The Supreme Court extended absolute immunity for § 1983 claims to state prosecutors in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In that case, a criminal defendant whose conviction had been overturned sued the prosecutor, several police officers, and a fingerprint expert, alleging "a conspiracy among them unlawfully to charge and convict him." *Id.* at 415–16, 96 S.Ct. 984. But the Court concluded that state prosecutors are absolutely immune from § 1983 damages claims based on activities "intimately associated with the judicial phase of the criminal process." *Id.* at 430, 96 S.Ct. 984. Thus, the Court held that a state prosecutor who acts "within the scope of his duties in initiating and pursuing a criminal prosecution" is absolutely immune from § 1983 claims for violating a "defendant's constitutional rights." *Id.* at 410, 96 S.Ct. 984.
>
> In discussing absolute immunity, "[t]he Supreme Court has made clear that 'it is the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant, that is of primary importance.' " *Loupe*, 824

F.3d at 538 (quoting *Kalina*, 522 U.S. at 125, 118 S.Ct. 502). "Thus, 'the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor.' " *Loupe*, 824 F.3d at 538 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)).

Instead, the Supreme Court has taken a "functional approach" to absolute immunity that "emphasize[s] that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). More specifically, the Court distinguishes between (1) actions taken "in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [the prosecutor's] role as an advocate for the State," and (2) "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Buckley*, 509 U.S. at 273, 113 S.Ct. 2606.

In *Buckley*, the petitioner sued "prosecutors for allegedly fabricating evidence during the preliminary investigation of a crime and making false statements at a press conference announcing the return of an indictment." *Id.* at 261, 113 S.Ct. 2606. The Supreme Court held that the prosecutors were not absolutely immune for allegedly fabricating evidence because they lacked "probable cause to arrest [the] petitioner or initiate judicial proceedings" at the time of the alleged fabrication. *Id.* at 274, 113 S.Ct. 2606. Thus, the prosecutors' "mission at that time was entirely investigative in character." *Id.* Importantly, however, the Court also recognized that "a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards. Even after that determination, . . . a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity." *Id.* at 274 n.5, 113 S.Ct. 2606; *see also id.* at 276, 113 S.Ct. 2606 ("When the functions of prosecutors and detectives are the same, . . . the immunity that protects them is also the same.").

We have adhered to this functional approach to absolute immunity. We have held that conduct protected by absolute immunity "is not limited 'only to the act of initiati[ng judicial proceedings] itself and to conduct occurring in the courtroom,' but instead includes all actions 'which occur in the course of [the prosecutor's] role as an advocate of the State.' " *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003) (per curiam) (quoting *Buckley*, 509 U.S. at 272–73, 113 S.Ct. 2606). Thus, prosecutors are absolutely immune even for "[w]ilful or malicious prosecutorial misconduct . . . if it occurs in the exercise of their advocatory function." *Cousin*, 325 F.3d at 635. But by the same token, "state prosecutors are not entitled to absolute immunity when they perform functions other than their quasi-judicial functions of 'initiating prosecutions and presenting the State's case.' " *Marrero v. City of Hialeah*, 625 F.2d 499, 507 (5th Cir. 1980) (quoting *Imbler*, 424 U.S. at 431, 96 S.Ct. 984)."

*Singleton v. Cannizzaro*, 956 F.3d 773 (5th Cir. 2020).

Here, the DA Defendants are entitled to absolute prosecutorial immunity because all of their alleged acts and omissions pertain to the initiating of judicial proceedings or conduct occurring in the courtroom, or otherwise occurred in the course of their roles as advocates for the State. Plaintiff does not allege that the DA Defendants were engaged in police investigative work, which is only entitled to qualified immunity. Even when read liberally in favor of Plaintiff, the allegations do not support a finding that the DA Defendants acted outside of their roles as advocates to the State. Plaintiff vaguely alleges that the DA Defendants created "a caustic atmosphere" around her and "acted outside the normal scope of their office and maliciously prosecuted Payton willfully and unreasonably with unparalleled unethical duplicity for years." (Compl. ¶ 96, 99). Plaintiff also raises conclusory allegations in support of a finding that there was no probable cause for the underlying stalking charges. (Compl. ¶¶ 95, 139). These vague and conclusory allegations do not raise a plausible claim that the DA Defendants acted outside of the course of their roles as advocates for the State. *See Twombly*, 550 U.S. at 557; *Iqbal*, 556 U.S. at 678.

The remainder of Plaintiff's allegations against the DA Defendants specifically pertain to their actions in court: failing to compel Kobb or Johnson to appear in court; reviewing an "almost empty file folder" at court; meeting with Kobb and Johnson during court proceedings; refusing to accept Plaintiff's assertions that she had evidence that "Johnson and Kobb were the actual stalkers." (*See* Compl. ¶¶ 112, 114, 127, 128, 130, 131, 133, 134, 136). Plaintiff's core allegations against Morgan and Stassi – that they "prevented Payton from having a trial and due process" – pertain solely to their alleged acts and omissions during the criminal proceedings. (*See* Compl. ¶ 141). To be clear, Plaintiff does not allege that prior to the issuance of the arrest warrant, any of the DA Defendants were present and participated in the questioning of witnesses

19

(including Kobb and Johnson) or suspects (Plaintiff) before there was probable cause for the issuance of the arrest warrant. *See Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (concluding that prosecutors were not entitled to absolute immunity where the functions of the prosecutors and the detectives were the same before there was probable cause for the plaintiff's arrest—including contacting an unreliable expert to make a positive identification and questing witnesses and suspects before the case was turned over to a special grand jury—, as well as where the prosecutor made false statements during the public announcement of the indictment).

Plaintiff does not allege that Clayton had any direct involvement in the criminal proceedings brought against her. Instead, Plaintiff alleges that Clayton "failed to train and supervise Stassi and Morgan in the lawful application of Louisiana's criminal law." (*See* Compl. ¶¶ 142-143). These allegations, to the extent brought against Clayton in his individual capacity, are similarly subject to dismissal based on absolute prosecutorial immunity. "The Supreme Court has extended prosecutorial immunity to include certain administrative actions, including the failure to train adequately or supervise other prosecutors to protect a defendant's rights." *Miller v. Harris Cnty.*, No. 08-2826, 2011 WL 4456094, at *15 (S.D. Tex. Sept. 22, 2011) (citing *Van de Kamp v. Goldstein,* 555 U.S. 335, 129 S.Ct. 855, 864–65, 172 L.Ed.2d 706 (2009)). Accordingly, Clayton is entitled to prosecutorial immunity with respect to this allegation that he failed to train adequately or supervise Stassi and Morgan.

In sum, Plaintiff has not asserted that the DA Defendants engaged in any act that was outside of their quasi-judicial functions. As such, the DA Defendants are entitled to absolute prosecutorial immunity with respect to Plaintiff's claims brought against them in their individual capacities. Prosecutorial immunity similarly bars all Louisiana state law claims brought against the DA Defendants in their individual capacities. *See Sharp v. Palmisano*, No. 13-5429, 2013

WL 5969661, at *4 (E.D. La. Nov. 8, 2013) (citing *Knapper v. Connick,* 681 So.2d 944, 947

(La.1996) (adopting federal doctrine of prosecutorial immunity). Prosecutorial immunity does

not, however, apply to the claims against the DA Defendants in their official capacities. *See*

*Sharp*, 2013 WL 5969661, at *4 (citing *Kentucky v. Graham*, 473 U.S. 159, 166-167 (1985)).[5]

Accordingly, the Court will separately address Plaintiff's claims against the DA Defendants in

their official capacities below.

### 2.    *Monell* Liability

A suit against a government official in his or her official capacity is the equivalent of a

suit against the government agency of which the official is an agent. *Burge v. Parish of St.*

*Tammany,* 187 F.3d 452, 466 (5th Cir. 1999). In other words, Plaintiff's claims brought against

the DA Defendants in their official capacities are really claims brought against the 18th Judicial

District Attorney's Office.

To determine whether Plaintiff has stated such a claim, the Court must conduct a

municipal liability analysis under *Monell v. Dep't of Social Services of the City of New York,* 436

U.S. 658 (1978). *See Nowell v. Acadian Ambulance Service,* 147 F. Supp. 2d 495, 501 (W.D. La.

2001) (citing *Turner v. Houma Mun. Fire and Police Civil Service Bd.,* 229 F.3d 478, 483 fn.10

(5th Cir. 2000)). To assert a claim of municipal liability under Section 1983, a plaintiff must

adduce sufficient factual matter to satisfy three elements: (1) the existence of an official policy or

custom; (2) a policymaker with final policymaking authority; and (3) a violation of constitutional

rights whose "moving force" is the policy or custom. *Davis v. Tarrant County, Tex.,* 565 F.3d

214, 227 (5th Cir. 2009). Municipal liability cannot be established by a theory of *respondeat*

*superior. Monell,* 436 U.S. at 691. Instead, the plaintiff must point to some official policy or

---

[5] The Court rejects the DA Defendants' argument that they are entitled to prosecutorial immunity with respect to claims brought against them in their official capacities. (*See* R. Doc 4-1 at 6).

custom that caused their constitutional harm. *Id.* The Fifth Circuit Court of Appeals has

unanimously defined an official policy for Section 1983 purposes as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984).

Whether an official has been delegated policymaking authority is a question of law for

the judge. *Gros v. City of Grand Prairie, Tex.*, 181 F.3d 613, 617 (5th Cir. 1999). In making this

determination, a court should consider state and local "positive law," as well as evidence of

municipal "customs and usages." *See id.* at 616; *see also id.* at 616 n.2 (observing that the

Supreme Court has rejected the principle of a "de facto" policymaker, but also determining that

continuous refusal of actual policymaker to review decisions of subordinate official would, "at

some point," establish the subordinate official as the policymaking authority via custom or

usage).

"Actual or constructive knowledge of [a] custom must be attributable to the governing

body of the municipality or to an official to whom that body has delegated policy-making

authority." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (quoting *Webster v. City of*

*Houston*, 735 F.2d 838, 842 (5th Cir. 1984)). Elaborating on these requirements, the Fifth Circuit

has stated:

> Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of the

violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.

*Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808–09 (5th Cir. 2017) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)).

Finally, "[t]o succeed [in alleging 'moving force' causation], 'a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.' " *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). "That is, 'the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.' " *Id.* (quoting *Brown*, 520 U.S. at 411).

Here, Plaintiff has failed to allege that any of the DA Defendants is a policymaker with final policymaking authority. To be clear, Clayton is the final policyholder for his office. *See Burge,* 187 F.3d at 469 ("[A] [Louisiana] district attorney is the independent and final official policymaker for all of the administrative and prosecutorial functions of his office"). Nevertheless, Plaintiff has failed to allege any policy or custom sufficient to establish municipal liability, much less that any policy or custom was the "moving force" to the alleged violation of her constitutional rights. In short, Plaintiff's Complaint fails to state a claim against the DA Defendants in their official capacities. Given the paucity of any allegations sufficient to establish *Monell* liability, the Court concludes that Plaintiff should be denied leave to amend to attempt to raise such a claim against any of the DA Defendants.

**F.     Plaintiff's Claims against Kobb and Johnson**

**1.     Federal Claims**

The nature of Plaintiff's claims against the Kobb and Johnson are unclear. Plaintiff alleges that "Kobb and Johnson intentionally made false reports and salacious accusations to the police, knowing that the information reported, conveyed or circulated to be false or baseless." (Compl. ¶ 12). Plaintiff further alleges that "Kobb and Johnson circulated false reports or warning of any alleged occurrence or impending occurrence of a crime throughout the community of Maringouin." (Compl. ¶ 13). The remaining allegations against these defendants appear to be complaints of harassment, alleged involvement in the "Maringouin mob," the failure of the authorities to address this harassment, and Kobb and Johnson's failure to appear at her certain court proceedings.

Plaintiff's federal claims against Kobb and Johnson fail as a matter of law. To state a claim under Section 1983, Plaintiff must establish that she was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. *See American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Id.*

Here, there can be no dispute that the allegations against Kobb and Johnson involve alleged private conduct. "It is well settled that private parties do not become state actors merely by calling upon law enforcement for assistance. Likewise, private citizens who give information to law enforcement do not become state actors under Section 1983 when the information is used to effect an arrest, even if the citizen knew that the information was false." *Spoon v. Bayou Bridge Pipeline, LLC,* No. 19-516, 2020 WL 5803453, at *3 (M.D. La. Sept. 29, 2020).

Accordingly, even if Kobb and Johnson made false accusations resulting in criminal proceedings against Plaintiff, and the remaining defendants relied on that information in initiating criminal proceedings against Plaintiff, those accusations are not conduct under color of state law. *See Pleasant v. Caraway*, 25 F.3d 1044 (5th Cir. 1994) ("A private individual complainant in a criminal prosecution does not act under color of law."); *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988) ("Police reliance in making an arrest on information given by a private party does not make the private party a state actor."); *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1079 (5th Cir. 1985) ("The execution by a private party of a sworn complaint, which forms the basis for an arrest, is, without more, not sufficient to make that party's acts state action.").

To the extent Plaintiff is seeking to allege that Kobb and Johnson are state actors based on the alleged "conspiracy" with the remaining defendants, that theory of liability must fail. There are at least four related tests to determine whether a private actor can be deemed a "state actor" for the purposes of Section 1983 liability:

> The Supreme Court has utilized a number of tests for deciding whether a private actor's conduct can be fairly attributable to the State. *See Richard,* 355 F.3d at 352 (summarizing tests); *Bass v. Parkwood*, 180 F.3d 234, 241–43 (5th Cir.1999) (same). The "public function test" examines whether the private entity performs a function which is "exclusively reserved to the State". *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 158, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Under the "state compulsion test", a private actor's conduct is attributable to the State when it exerts coercive power over the private entity or provides significant encouragement. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 170–71, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The "nexus" or "state action test" considers whether the State has inserted "itself into a position of interdependence with the [private actor, such] that it was a joint participant in the enterprise". *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357–58, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). And, under the "joint action test", private actors will be considered state actors where they are "willful participant[s] in joint action with the State or its agents". *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). The Supreme Court has not resolved "[w]hether these different tests are actually different in operation or simply different ways of

characterizing [this] necessarily fact-bound inquiry . . . ." *Lugar*, 457 U.S. at 939,
102 S.Ct. 2744.

*Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549–50 (5th Cir. 2005).

Under any of these tests, Plaintiff has alleged insufficient facts to support a finding that
Kobb and Johnson are state actors for the purposes of Section 1983 liability. As discussed above,
Kobb and Johnson cannot be held liable as state actors for simply reporting information, even if
false, that was relied upon by law enforcement to arrest Plaintiff and initiate criminal
proceedings against Plaintiff. Plaintiff has not alleged that Kobb and Johnson performed any
functions exclusively reserved to the State, such as prosecuting Plaintiff. Plaintiff has not alleged
that Kobb and Johnson were joint participants in the prosecution of Plaintiff. While Plaintiff does
allege that "Stassi and Morgan intentionally encouraged deceit from witnesses and committed
proprietorial bluffing when they encouraged Johnson and Kobb to gather evidence on Payton,"
there is no allegation that Johnson and Kobb, in fact, gathered false evidence as joint participants
with the DA Defendants to prosecute Plaintiff after she was arrested. (*See* Compl. ¶ 10). Finally,
"[t]o maintain a claim that a private citizen is liable under § 1983 on the basis of joint action with
state officials, [Plaintiff] 'must allege facts showing an agreement or meeting of the minds
between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a
constitutional right, and that the private actor was a willing participant in joint activity with the
state or its agents.'" *Cook v. City of Shreveport*, No. 10-0809, 2011 WL 3665000, at *4 (W.D.
La. Aug. 19, 2011) (quoting *Polacek v. Kemper County, Miss*., 739 F. Supp. 2d 948, 952 (S.D.
Miss. 2010)). At most, Plaintiff alleges that Kobb and Johnson made false reports resulting in
Plaintiff's arrest. There is no allegations that these private actors had a "meeting of the minds"
with any of the other defendants to violate Plaintiff's constitutional rights.

For the foregoing reasons, the Court concludes that Kobb and Johnson are not state actors for the purposes of Section 1983, and, therefore, cannot be liable under federal law based on the asserted Section 1983 claim.[6]

### 2. State Law Claims

"The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Ordinarily, the fact that all federal claims have been disposed of counsels in favor of the district court declining to retain jurisdiction over any pendent state law claims, but dismissal is not mandatory, and the district court has discretion to retain jurisdiction, a decision to which this court defers absent abuse of that discretion." *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 756 n.12 (5th Cir. 2001) (citations omitted).

Here, it is unclear what, if any, state law claims Plaintiff is raising against Kobb and Johnson. Accordingly, it is appropriate to decline jurisdiction over those state law claims and deny them without prejudice to refile in state court.

### III. Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that this matter be **DISMISSED** in its entirety as follows:

**IT IS RECOMMENDED** that Tony Clayton, Scott Stassi, and Nedi Morgan's Motion to Dismiss under Rule 12(b) for Insufficient Service of Process  (R. Docs. 23, 25, 26) be **DENIED**.

---

[6] Moreover, to prevail on a Section 1983 conspiracy claim, Plaintiff must establish "the existence of (1) an agreement to do an illegal act and (2) an actual constitutional deprivation." *Whisenant v. City of Haltom City,* 106 F. App'x 915, 917 (5th Cir. 2004) (citing *Cinel v. Connick,* 15 F.3d 1338, 1343 (5th Cir. 1994))). Plaintiff much allege "specific facts to show an agreement." *Tebo v. Tebo,* 550 F.3d 492, 496 (5th Cir. 2008) (quotation omitted); *accord Anderson v. Law Firm of Shorty, Dooley & Hall,* 393 F. App'x 214, 217 (5th Cir. 2010) (citing *Lynch v. Cannatella,* 810 F.2d 1363, 1369-70 (5th Cir. 1987)). Here, Plaintiff has not alleged any agreement between Kobb and Johnson and the remaining defendants that would plausibly allege a conspiracy for the purposes of Section 1983.

**IT IS RECOMMENDED** that Tony Clayton, Scott Stassi, and Nedi Morgan's Motion to Dismiss Pursuant to FRCP Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted (R. Doc. 4) be **GRANTED**, and Plaintiff's federal and state law claims against Tony Clayton, Scott Stassi, and Nedi Morgan be **DISMISSED WITH PREJUDICE.**

**IT IS RECOMMENDED** that Justice Eugene Simpson's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6) (R. Doc. 33) be **GRANTED**, and Plaintiff's federal and state law claims against Justice Eugene Simpson be **DISMISSED WITH PREJUDICE.**

**IT IS RECOMMENDED** that, based upon the Court's review of Plaintiff's Complaint, Plaintiff's federal claims against Kristin Kobb and Mayland Johnson be **DISMISSED WITH PREJUDICE**, and Plaintiff's state law claims against Kristin Kobb and Mayland Johnson be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3).

Signed in Baton Rouge, Louisiana, on January 5, 2024.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**